# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES JEFFERSON KENNER,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL OFFICER VIDAURRI, et al.,<br><br>Defendants. | 3:08-cv-00165-HDM (RAM)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment. (Doc. #35.)[1] Plaintiff has opposed the motion (Doc. #37), Defendants have replied (Doc. #38), and Plaintiff has filed a sur-reply (Doc. #39). After a thorough review, the court recommends that the motion be granted.

## I.  BACKGROUND

Plaintiff James Jefferson Kenner is currently in the custody of the Nevada Department of Corrections (NDOC) as an inmate at the Northern Nevada Correctional Center (NNCC). (Pl.'s Compl. 1 (Doc. #4).) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. Defendants are all NDOC employees. (*Id.* at 2.) Plaintiff seeks damages and injunctive

---

[1] Refers to the court's docket number.

relief. (*Id.* at 9.)

Plaintiff's complaint states three counts that each contain several causes of action. In an order issued January 9, 2009, the court dismissed Count I in its entirety and part of both Count II and Count III. (Doc. #22.) Two claims remain in this action.

In Count II, Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights by placing him in "solitary confinement" for twenty-eight days without conducting a hearing beforehand. (Pl.'s Compl. 5.)

In Count III, Plaintiff alleges that Defendants violated his Eighth Amendment rights by allowing him to be exposed to second-hand smoke. (*Id.* at 6.)

## **II. LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

**A.     Due Process Claim**

In Count II, Plaintiff claims that Defendants violated his due process rights by placing him in "solitary confinement" without conducting a hearing beforehand. (Pl.'s Compl. 5.) Defendants contend that Plaintiff was placed in administrative segregation pending charges filed against him and that such a transfer does not implicate a liberty interest. (Defs.' Mot. for Summ. J. 5-6 (Doc. #35).) Defendants also argue that if a state-created liberty interest exists, due process was satisfied because Plaintiff received notice and a hearing within four days of being placed in segregation. (*Id*. at 6.)

In analyzing the procedural safeguards owed to an inmate under the Due Process Clause, the court considers two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected liberty or property interest, and (2) whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir.

2003) (citations omitted). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish a liberty interest for which the protection is sought. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Liberty interests can arise both from the Constitution and from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).) The Due Process Clause does not confer a liberty interest in being confined in the general prison population instead of administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). The courts do not review prison authorities' decisions regarding confinement as long as the confinement at issue does not otherwise violate an inmate's constitutional rights. *Id*. at 467.

Here, Plaintiff alleges being placed in "solitary confinement." (Pl.'s Compl. 5.) However, the evidence shows that Plaintiff was confined in administrative segregation. (Defs.' Mot. for Summ. J. Ex. B-1 at 1.) Plaintiff is not alleging any other constitutional violations other than his placement in administrative segregation. As stated above, there is no liberty interest in being free from placement in administrative segregation. Thus, Plaintiff does not have a liberty interest under the Constitution.

Second, liberty interests created by the state are generally limited to freedom from restraint that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano*, 345 F.3d at 1078. Three factors guide this inquiry: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id*.

1  (citing *Sandin*, 515 U.S. at 486-87; *Keenan v. Hall*, 84 F.3d 1083, 1089 (9th Cir. 1996))
2  (quotations omitted).

3     Here, the restraint resulting from placement in administrative segregation did not
4  impose an atypical or significant hardship on Plaintiff. As to the first factor, Plaintiff fails to
5  submit evidence that his conditions in administrative segregation were any different than those
6  of other inmates in administrative segregation. As to the second factor, pending an
7  investigation, Plaintiff remained in administrative segregation for twenty-eight days. (*Id.* Ex.
8  B-2 at 1-5.) By contrast, in *Serrano*, the plaintiff was housed in administrative segregation for
9  two months and twenty-five days preceding a sentence to segregation for a full year. *Serrano*,
10 345 F.3d at 1078. Additionally, administratively segregated inmates are afforded the same
11 meals, correspondence privileges, visitation privileges, and canteen purchases as inmates in
12 the general population. (Defs.' Mot. for Summ. J. Ex. C-1 at 7-9.) The court finds that neither
13 the duration nor the degree of restraint imposed on Plaintiff in administrative segregation is
14 significant enough to weigh in favor of finding a liberty interest. Furthermore, as to the third
15 factor, there is no indication in the record that Plaintiff's classification in administrative
16 segregation will affect the duration of his sentence. *See Jimenez v. Cox*, 2009 U.S. Dist. LEXIS
17 1368, *24 (D. Nev. 2009) (finding that mere placement in administrative segregation did not
18 affect the duration of the plaintiff's sentence). Although Plaintiff alleges that his loss of work
19 credits implicates the duration of his sentence, he submits no evidence to show this to be the
20 case. Thus, all three factors weigh in favor of finding that Plaintiff's placement in
21 administrative segregation did not pose an "atypical or significant hardship" sufficient to give
22 rise to a protected liberty interest.

23    Moreover, prison officials provided Plaintiff proper due process. Although the Due
24 Process Clause does not require that inmates be housed in the general population, it does
25 require that prison officials follow certain procedural requirements when removing an inmate
26 from the general population. First, prison officials must offer the prisoner the opportunity to
27 present his case to the appropriate official "within a reasonable time after [he] is segregated."
28 *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). Second, prison officials must

conduct periodic hearings for each prisoner in administrative segregation to determine if segregation is still appropriate. *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990).

The court finds that both requirements of due process have been met. First, Plaintiff was placed in administrative segregation on April 26, 2007. (Defs.' Mot for Summ. J. Ex. B-1 at 1.) That same day, Plaintiff received notification of his classification hearing. (*Id.*) Plaintiff's classification hearing took place four days later on April 30, 2007. (*Id.* at 2.) The court finds that both the notice and hearing took place within a reasonable time after placement in administrative segregation. *See McFarland v. Cassady*, 779 F.2d 1426, 1426-27 (9th Cir. 1986) (holding that a hearing within five weeks of administrative segregation was reasonable). Second, Plaintiff was released from administrative segregation before an additional periodic hearing became necessary. *See Toussaint*, 926 F.2d at 803 (holding that a hearing every 120 days satisfies due process requirements).

Plaintiff seems to claim that his rights were violated because he did not receive a hearing before entering administrative segregation. However, Plaintiff is not entitled to a hearing before placement in administrative segregation. Rather, an inmate may be placed in segregation immediately when necessary to protect the inmate or others so long as the placement satisfies the requirements of due process. Plaintiff admits that he received both notice and a hearing. (Pl.'s Opp'n 1 (Doc. #37).) Furthermore, both the notice and hearing were within a reasonable time after segregation. Thus, Plaintiff's claim fails because he does not have a liberty interest in being free from administrative segregation and he was afforded proper process after placement in administrative segregation. Therefore, Defendants should be granted summary judgment on Plaintiff's due process claim in Count II.

**B.  Conditions of Confinement**

Plaintiff claims that Defendants were deliberately indifferent to his well-being by placing him in a cell with another inmate who smoked. (Pl.'s Compl. 6.) Plaintiff claims that his exposure to second-hand smoke could lead to unknown future health consequences. (*Id.*) Defendants argue that summary judgment should be granted in their favor because Plaintiff has not established evidence that: (1) he was exposed to unreasonably high levels of smoke, or

(2) if there was such smoke, that officials were deliberately indifferent to that risk. (Defs.' Reply 7 (Doc. #38).)

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

In challenging prison conditions, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(citing *Farmer*, 511 U.S. at 835). The deliberate indifference standard consists of an objective and subjective component. *Farmer*, 511 U.S. at 843. First, "the deprivation alleged must be, objectively, sufficiently serious." *Id*. (citations and quotations omitted). The act or omission of a prison official must "result in the denial of the minimal civilized measure of life's necessities." *Id*. (citations and quotations omitted). Second, a prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128. Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Prison officials violate the Eighth Amendment when they house an inmate in an environment that exposes him to a level of second-hand smoke that poses an unreasonable risk of serious damage to his present or future health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). To establish an Eighth Amendment violation, a plaintiff must show: (1) that he was exposed to levels of smoke that pose an unreasonable risk of serious damage to his present or future health, (2) that it is "contrary to current standards of decency for anyone to be so exposed against his will," and (3)

1 that prison officials acted with a culpable state of mind of deliberate indifference. Id.at 35-36.

### 1. Objective Prong: Unreasonable Risk of Serious Damage and Current Standards of Decency

The claimant must "prove his allegations, which will require him to prove both the subjective and objective elements necessary to prove an Eight Amendment claim." *Helling v. McKinney,* 509 U.S. 25, 35 (1993). Since Defendants do not bear the ultimate burden of proof at trial, they are only required to show that there is no genuine issue of material fact on at least one of the essential elements of Plaintiff's Eighth Amendment claim. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). Defendants may do so by producing affirmative evidence in the form of declarations or affidavits, for example, to negate a material fact in Plaintiff's case or by pointing out the absence of a genuine issue of a material fact in Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Although Plaintiff asserts that his health is at risk because of exposure to second-hand smoke while allegedly housed with a smoker, Plaintiff offers no proof to substantiate his claim. Courts will accept a complaint's allegations as true on a motion to dismiss. *Pelletier v. Fed. Home Loan Bank of San Francisco*, 986 F.2d 865, 872 (9th Cir. 1992). When facing a motion for summary judgment, however, the nonmoving plaintiff must supply affidavits containing admissible evidence that shows a genuine dispute of material fact. *Id.* Thus, in the context of the Eighth Amendment, a plaintiff must show "the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure" to second-hand smoke, and "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis omitted).

Here, Plaintiff claims that the correctional officers "knew or should have known" about the dangerous effects of second-hand smoke "through [television] and radio commercials, news papers etc." (Pl.'s Sur-Reply 3 (Doc. #39).) Plaintiff further claims that society considers the risks of second-hand smoke to be sufficiently grave and that it is common knowledge. Id. While Defendants may in fact be aware of potential health risks, Plaintiff fails to show that

smoking actually occurred.

The only evidence Plaintiff offers to show second-hand smoke in his cell, aside from his allegations within his complaint and opposition, is an attached grievance.[2] (Pl.'s Reply Ex. C at 2 (Doc. #39).) The grievance Plaintiff submits contains a staff comment that Plaintiff claims is evidence that smoking in his housing unit was taking place. (*Id.*) The grievance in Exhibit C shows a staff comment stating that " [s]taff are enforcing the no smoking policy. This is evident by the large number of disciplinary charges filed for smoking violations." (*Id.*) Although this comment gives rise to the inference that some smoking by inmates was taking place somewhere in Plaintiff's housing unit, the staff comment is insufficient to show that Plaintiff, himself, was actually exposed to levels of smoke posing an unreasonable risk to his health.

Therefore, Plaintiff fails to show that he was exposed to unreasonable levels of second-hand smoke. However, assuming that such a serious risk did in fact exist, summary judgment in favor of the Defendants is still appropriate because Plaintiff offers no evidence that Defendants were subjectively aware of such a risk, as discussed below.

**2. Subjective Prong: Deliberate Indifference**

The second prong of an Eighth Amendment claim requires that prison officials act with deliberate indifference, determined by their "attitudes and conduct . . . ." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A plaintiff must show something more than a mere " ordinary lack of due care for the prisoner's interests or safety[,]" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)), but may show less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. Essentially, "the official [must] know[ ] of and disregard[ ] an excessive risk to [an] inmate['s]

---

[2] In some instances, a verified complaint may be used as an opposing affidavit under Fed. R. Civ. P. 56. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). To function as an opposing affidavit, "the verified complaint must be based on [plaintiff's] personal knowledge and set forth *specific* facts admissible in evidence." *Id*. (emphasis added). A plaintiff's complaint is insufficiently specific where it merely states a "skeletal set of bland allegations" devoid of the pertinent who, when, and where. *Id*. n. 12 (quoting *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 299 (1st Cir. 1986). Here, Plaintiff's complaint lacks the sufficiently specific allegations necessary for his complaint to function as an opposing affidavit.

health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837

Plaintiff claims that "officials were aware or should have been aware of smoking taking place in [P]etitioner's shared cell by the grievances filed." (Pl.'s Sur-Reply 4 (Doc. #39).) Defendants, however, present the inmate grievance report regarding Plaintiff's Eighth Amendment claim, showing that the grievances were assigned to Tony Corda, James Benedetti, and Don Helling. (Defs.' Mot. for Summ. J. Ex. A-2 at 1-2 (Doc. #35).) The Defendants in this case are Correctional Officer Vidaurri, Correctional Officer Flum, Correctional Officer Columbus and Lt. Jeffery Wiley. Therefore, because none of the Defendants in this case processed any of Plaintiff's grievances, Plaintiff fails to show that Defendants were aware of Plaintiff's smoking complaints. Furthermore, even if Defendants were aware of the smoke, Plaintiff fails to show that they disregarded a substantial risk of serious harm to Plaintiff. In the absence of evidence demonstrating Defendants' awareness of Plaintiff's complaints, Plaintiff fails to show that Defendants were deliberately indifferent.

Plaintiff's evidence is simply inadequate to show Defendants' subjective knowledge of his complaints, and thus, Plaintiff fails to establish a genuine issue of material fact. Therefore, Defendants' Motion for Summary Judgment should be granted on Plaintiff's Eighth Amendment claim in Count III.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #35).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled " Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities

1 for consideration by the District Court.

2     2.    That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED:   June 10, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

11